We are now going to move to our final case of the morning. This is Appeal 22-1602. I don't see Mr. Duncan. Here he is. Mr. Duncan, the last case was quite quick. You can come right up to the podium. No problem, no problem at all. Mr. Duncan, I'll recognize you for appellant argument. All right. Thank you. May it please the court. Dana Duncan on behalf of Cindy Desotelle. Mrs. Desotelle was 48 at the alleged onset date, November 4th of 2016. Date last insured September 30th, 2018. She turned 54 months before the date last insured. The decision was issued in December of 2019. The two issues presented are relatively straightforward. The vocational testimony and the ALJ's handling of the persuasiveness of Dr. Michael Kulczewski's opinion. As far as the vocational testimony, I'll keep it brief because it's fairly straightforward. Once questioned, the ALJ has a duty to ensure that the vocational expert is using a reliable method. That's precedent from both Brace and from Chavez and from Ringer. Mr. Duncan, can I ask you a question on this front? You do this a lot. You have a lot of experience. Yes. You've been in here a bunch before and we've had similar dialogues about this issue. Yes. Do you believe that a claimant or her counsel is under an obligation to object to a VE's testimony that is deficient in one way or another? With the foresight that you know, the ALJ is going to lean into the VE's testimony to come up with the estimate at step five that way. Is there an obligation to object? I don't believe legally there is, and I'll state that for two reasons. First of all, the law says it's the ALJ's obligation once questioned, and so that places the onus on the ALJ. In fact, as I've cited in my brief, HALIX provision, I-2-6-74 specifically directs ALJs to address vague or unclear vocational testimony and seek an explanation to the level that the average claimant can understand. Each of the cases you've cited before though, Ringer, et cetera, Chavez, they always followed a challenge or an objection. They did, but I don't know if it's necessary. And the point I'll also make is, and I didn't know if I raised it in this particular case, both under Sims and Carr, there's a question as to whether there is a waiver that's even possible in an administrative proceeding. Professor Dubin, John Dubin, who's the writer of the Social Security Treatise for Westlaw, wrote an article in George Mason Law Review indicating that current case law, and one being Washington versus Commissioner out of the 11th Circuit, was stipulated remand at the request of the court, the Supreme Court, indicating that waiver was found by the 11th Circuit and that issue no longer was deemed relevant following the Carr decision. And so there's a question as to whether waiver even exists. These are informal hearings, and this court has already held in Reneker, I guess is the name, an unpublished decision that an unrepresented claimant does not have to object because he's unrepresented and ALJ has a duty to develop the record. So I don't think an objection is absolutely necessary for those two reasons. Is it wise? Yes. And do I now do that on a regular basis and instruct my associates to do it? Yes. And in part, some of these cases coming before the court are done to develop the parameters of what we are to do or not to do or what we can do or not do for challenging vocational testimony. And it's interesting you say it that way because sometimes it feels like a time warp because we're reading the hearing transcript from year X, but it's not till X plus three that we're actually getting the standard. Correct. And then we're constantly trying to update our information and figure out what's going on. And I was just told, as a matter of fact, on Tuesday by a vocational expert who had been in touch with the Department of Labor that the Department of Labor may be scrapping the ORS completely and starting over, which would now mean that the system that Social Security has been working with Labor to develop since 2008 may not be implemented for another eight, ten years. This shows the power of Judge Scudder. Yeah. Mr. Duncan, let me get your help on one other thing. All right. You included these here tables. Yes. You know what I'm talking about? Yes. In your brief, and you did it again in your reply brief. Yes. Okay. And I thought that the point you were making in your reply brief, tell me if I'm wrong, this is important to me. Yes. Okay. Is that you tried to recreate the numbers that the VE, the ALJ relied upon at step five through the VE's work. You tried to do it. Correct. Okay. And you couldn't do it. No. Okay. Is that what you, was that the point of including the tables? Yes. And what I try to do is, I try to use the same numbers when I'm doing the tables, but sometimes I've been able to track down an older copy of the ORS or the OEQ. Yeah. And then use a more relevant copy that would have been about the time the testimony was taken. Okay. So there may be some difference in the numbers that way. I think there may be a clerical error. And I'm not worried about it. You can fix it. Okay. In your reply brief, when you redid the chart, okay, in your appendix, I think what you intended to attach was the underlying material from the OEQs. Yes. To allow us to go through the same exercise and see that you can't recreate the numbers. Yes. Okay. But your appendix doesn't have OEQ material. I think what you mistakenly did is put behind it the ALJ's opinion again. Okay. So can I, with Judge Brennan's permission, can I ask a favor? Could you correct that? I would be glad to do that, Your Honor. I apologize. We have to compile the briefs because they're in sections, and with our software, apparently I must have picked up the wrong piece of the appendix. Okay. So my other question is the charts in the brief are different. Yes. Okay. They have different numbers in them, not in the column regarding the VE's testimony, but in the column regarding the Bureau of Labor Statistics. Why is that? Why wouldn't they be exactly the same? Because I think on the first one I used the current one, which would be the 2021 numbers. Yep. And then I was able to find in the BLS the 2020 numbers, which would have been more in tune with the time of the testimony. Okay.  Thank you. All right. So anyway, the point being is that ultimately, and I'm sure counsel will be arguing, Coyer, is that somehow I've waived my challenge or it's been waived in this case. Coyer is different in that that was an opportunity where the ALJ actually did something and said you can articulate what your challenge is. And I erroneously failed to do so because I didn't think it was necessary, but obviously the court differed and that's why Coyer is there. It's unpublished. Think of these as tennis matches. That's my best analogy. Once questioned, I've returned serve to the ALJ. The ALJ then can ask questions. If I don't do anything further, then probably the ALJ can rely on the testimony. If I do return and ask further questions, then it behooves the ALJ to ask further questions and inquire and find out what's going on. The one thing I will say about this, we have an OEQ, equal distribution. This has been a problem that the court has noted since 2014. The ALJ asked no question. There's nothing to ask the VE why she believes that this is a valid method, which is stated in Brace and in Ringer. And so we have a big vacuum in this particular case. So with that in mind, I'll save the last 20 seconds, I guess, for rebuttal. Thank you, Mr. Duncan. Ms. Godfrey will recognize you now for argument from the appellee. Good morning. May it please the court. Jean Godfrey on behalf of the Commissioner of Social Security. Desotel presents two arguments challenging the ALJ's decision in this case. Both of these arguments fail, and this court should therefore affirm. First, with respect to the vocational expert's testimony, Desotel has waived or forfeited any challenge that she now raises before this court. She was represented by counsel at the administrative level, and her attorney filed a pre-hearing brief with the ALJ. That brief appears on page 350 of the transcript, and counsel stated, I reserve any objections to the testimony until I hear the content of the testimony. The claimant is objecting unless the V.E. provides a reasoned and principled explanation of the methodology used. And then at the hearing, counsel asked the vocational expert only two questions. Neither of these questions revealed any shortcomings in the vocational expert's data or reasoning. After counsel heard these answers, he did not probe further. Despite reserving the fact to raise an objection in the pre-hearing brief, he did not raise any specific objections, either at the hearing or in a post-hearing brief. He did not challenge the testimony in any way or ask the ALJ to disregard those job numbers. Now, counsel had plenty of time to do so. The ALJ held the record open for two weeks for counsel to submit additional medical records, and then he did not issue a decision for four more months. So there's plenty of time to raise this objection in the post-hearing brief, as counsel indicated he was considering doing so. Now, this court recently reiterated in Coyer that these omissions effectively conceded the reliability of the vocational expert's job number estimates, and that DeSotel has now waived her current argument challenging those estimates. And we're not only relying on Coyer. This court's precedent, published controlling precedent, also supports a finding of waiver here. For example, in Liskowitz v. Astrew, which was issued in 2009, the claimant in that case similarly first challenged the vocational expert's reliance on occupational employment quarterly and federal court. And this court, again, held that was too late. This is a quote directly from that decision. Had Liskowitz actually objected to the vocational expert's testimony, the V.E. could have said more about the kind of information the OEQ contains. As it stands, however, the V.E.'s testimony was both unobjected to and uncontradicted. Thus, the ALJ was entitled to credit this testimony. Ms. Godfrey, if we focus on the transcript from the V.E.'s testimony, that's really the only evidence, right, that supports the ALJ's estimates, right? There's not another series of documents. There's not other witnesses. It's this testimony. Correct, yeah. Okay. And so if we take the four corners of the testimony, how would you describe the method that the V.E. employed? Well, the V.E. testified that she used the source Occupational Employment Quarterly, which is a private publication that in turn utilizes data from the Bureau of Labor Statistics. And she looked at the numbers provided by OEQ and determined in her expertise whether or not they were grossly overweighted. And if they were, then she did not use those numbers. But if they were not, then she did. She didn't perform any additional calculations if she deemed the numbers reasonable. Okay. And would you call – it's one thing to say, well, I used the OEQ and I went over to the Bureau of Labor Statistics numbers. That's identifying the sources that were used. What's the method? Is this the equal distribution method? Okay. She didn't explicitly say she was using the equal distribution method. However, I think that is a fair reading because she testified she relied on Occupational Employment Quarterly, which this court has acknowledged does use the equal distribution method. But it was incumbent on the claimant's attorney to then inquire further to raise any issues with this testimony. There was nothing dubious or problematic on the face of these responses here. She identified straightforward jobs. We had 200,000 office helper jobs and around 50,000 mail clerk jobs. So, you know, in contrast to, for example, Chavez v. Berryhill, where questioning of the vocational expert revealed that there were two different methods that yielded two very different job numbers for one of the occupations. There was 800 versus over 100,000. And the vocational expert there just could not explain why he had any confidence in one method over the other. So that testimony was problematic on its face. And the ALJ there did have a duty to inquire further and follow up. But here we don't have that same sort of problematic, you know, dubious testimony. The ALJ... I don't know how we can conclude that we know what the VE did. Okay. I mean, we know where the numbers came from in the ALJ's report because we can look at the VE's testimony. But the thing that frustrates me over and over again in these cases is I look at these transcripts and I think it seems to be an effort to get the testimony done as fast as possible in the most abbreviated terms possible. There's nothing here that even tells us how the VE approached it. Why does this keep happening, in your view, over and over and over again? Well, yes. I agree there are time constraints. You know, the ALJs are holding thousands of hearings a year. And they have to listen to testimony from the claimant and also solicit testimony from the vocational expert. But it doesn't take that long to say, Dr. Wankin, what method did you apply to come to your estimates? Right? You can ask that in a single line of transcript testimony and then answer. No need for it to be belabored. Well, the same number of questions were also posed to the vocational expert inquirer. And the court there found that counsel had waived the subsequent challenge by failing to inquire further. And here, as I mentioned, counsel did have the opportunity to submit a post-hearing brief disputing the vocational expert testimony. And that was when it was incumbent. Now counsel wants to rebut the vocational expert's numbers with his own calculations. But that was the time where he should have done so, was at the administrative level. Because now we have no factual development. Suppose when Mr. Duncan sends us in the backup material from the OEQ, suppose we can't recreate it. Suppose you can't recreate it. Then what? I have concerns about the year of the data that counsel is relying on. Because here, the hearing took place in August 2019. So in his initial opening brief, he was relying on data from 2020. Which, as I noted in my response, was not in existence at the time of the hearing. So for there to be a fair comparison, we need to have verified with the vocational expert here what version of the OEQ she was using. And that was not questioned, that counsel did not ask. So that would have been the time to ask these specific questions about what she was relying on, what year, this version. It's a private publication, so I don't have access to that. But for there to be a fair comparison, it would need to be data that was actually available in existence at the time she was testifying. One final question. Where do we stand on the 2008 project to create a unified job system to make this more coherent and more reliable? The agency is currently working on the replacement. I have not heard anything that it's being abandoned. We're aware of the frustration of the court regarding the timeline. I believe there also needs to be some new regulations promulgated as well. So it's ongoing and I don't have a specific answer about the timeline. But on the record as it stands here, which was utilizing the DOT and the vocational expert testimony, a reasonable mind could have accepted the responses on their face as reliable. One more thing I want to note is that raising objections at the administrative level does promote administrative and judicial efficiency. If counsel had objected, we would have a response from the ALJ and the court could review all of that now. We wouldn't need to remand it for another hearing. If the court has no further questions, then we ask that you affirm the ALJ's decision. Thank you, Ms. Godfrey. Mr. Duncan, we'll give you two minutes on rebuttal. I don't need to really remind the court, but these are supposedly informal hearings. Claimants already have to face the prospect of producing evidence at least on four steps that exceeds with substantial evidence. We're behind the eight ball most of the way through these hearings and the commissioner keeps saying that we have to do more to question the vocational experts than when the duty rests with the ALJ once questioned. It's not our burden of proof at step five. It's the commissioner's, and they just keep saying we need to do more and more and more. Well, I can tell you that what ends up happening is that when we do question and object, the vocational experts will all of a sudden get a notice of hearing and we'll have a new supplemental hearing with a new vocational expert who's then brought in to testify once we've objected to the previous vocational work. So the question is if ALJs have the time to do supplemental hearings and to get a different vocational expert, why don't they take the time to properly build a record at the initial hearing? Now, briefly, I just wanted to mention the point with the second part of this, which is with the doctor's opinion. The ALJ based the entirety of the objection on a blanket statement that the medical evidence did not support his opinion and that it was based on subjective statements. She points to no subjective statements that were made. She also points to not one medical opinion or medical record that contradicts his opinion that she was going to need a sit-stand option at will, which would have placed her in a sedentary work environment and would have resulted in her being found disabled as of her 50th birthday. So thank you. Thank you, Mr. Duncan. Thank you, Ms. Godfrey. The case will be taken under advisement, and that will complete our arguments for today.